ANNA GREINER, admx. of Louis Greiner, deceased, appellant,

v.

WILLIAM GREINER et al., respondents.

---

WILLIAM GREINER et al., appellants,

v.

ANNA GREINER, admx. of Louis Greiner, deceased, respondent.

1. An administratrix assigned to her counsel certain stock of the estate, and he immediately transferred it to her individually. On a bill in chancery against her by the next of kin, the transaction was declared fraudulent, and the administratrix was ordered to hold the stock and account in chancery for it and its accumulations, and was enjoined from disposing of it.—*Held*, that, in settling her account, she was, under the circumstances, entitled to an allowance for the depreciation of the stock pending the injunction.

2. A widow may reclaim from her husband's estate moneys of her separate estate which she loaned him during his lifetime, and which he applied to the payment of a mortgage on lands, the title to which stood in the names of her and her husband, as husband and wife.

Greiner v. Greiner.

Appeal from decree of Essex orphans court.

*Mr. J. W. Taylor*, for the administratrix.

*Mr. J. Whitehead*, for the next of kin.

The Ordinary.

These are cross appeals from the decree of the Essex orphans court upon the final account of the administratrix of Dr. Louis Greiner, deceased. Her husband, Dr. Greiner, died intestate in November, 1874. The administratrix filed her inventory of the estate December 21st, 1874. It included two hundred and fifty shares of the capital stock of the Newark City Mutual Insurance Company as the property of the deceased, which were appraised at $12,500. On the next day after the filing of the inventory she assigned that stock to her counsel, merely for the purpose of obtaining title thereto herself, for her own personal use, by means of an assignment of it by him to her; and he, by an assignment dated the next day, transferred it to her accordingly. She filed her final account in the orphans court, September 30th, 1875. In it she charged herself with the amount of the inventory, and, among other things, claimed allowance for

Note.—It has been held that a husband could mortgage his interest in lands conveyed to him and his wife, during his wife's life, *Barber* v. *Harris, 15 Wend. 615; Jackson* v. *McConnell, 19 Wend. 175; Harding* v. *Springer, 14 Me. 407; Bomar* v. *Mullins, 4 Rich. Eq. 80; Boykin* v. *Rain, 28 Ala. 332.* But see *Ketchum* v. *Walsworth, 5 Wis. 95; Chandler* v. *Cheney, 37 Ind. 391.*

In *Creighton* v. *Clifford, 6 Rich. (N. S.) 188,* lands were conveyed in trust for a husband and wife, with a power of sale, at their request, for re-investment to same uses.—*Held,* that a bond and mortgage thereon given by the trustee, at their request, to secure an individual debt of the husband, was void as to the wife, but valid as to the husband.

In *Grute* v. *Locroft, Cro. Eliz. 287,* a lease of lands held in joint-tenancy with his wife, made by the husband, to commence after his death, was held good, although the wife survived. See *Emmert* v. *Hays, 89 Ill. 11.*

In *Watts* v. *Thomas, 2 P. Wms. 364,* a husband, after marriage, purchased a term for himself and wife, and the survivor, and afterwards assigned the term in mortgage, to be void on payment of the money by himself or his wife, with covenant for quiet possession until default. Seven years afterwards, the husband contracted debts and died.—*Held,* that the settlement was assets to pay creditors.

$3,830.28, with interest, as the amount of a loan which she claimed to have made July 4th, 1874, to her husband, of her own money, received by her from her mother's estate. On the 12th of October, 1875, the next of kin (who are the brothers and sisters of the intestate) filed exceptions to the account, and in December, 1876, those exceptions were referred to a master in chancery. By a final decree of the court of chancery, made May 30th, 1877, in a suit brought by the next of kin to set aside those transfers of stock as fraudulent, they were decreed to be fraudulent and void, and the administratrix was required to account in that court for any and all dividends received by her thereon, or upon any accumulations of capital stock thereon ; and was enjoined from selling, assigning, transferring or in any way encumbering or disposing of the stock or accumulations until the further order of that court. On the 11th of May, 1880, the master reported that the administratrix should be charged with a stock dividend, which was declared on the stock inventoried, and with the dividends received by her on both, and interest thereon, and that her claim for money lent and interest thereon should be · disallowed. She excepted to the report in both respects. The exceptions on both sides were heard in the orphans court in June, 1880, but the decree was not made until June, 1881. In Decem-

In *Back* v. *Andrews,* *2* *Vern.* *120,* a husband purchased a copyhold estate, with the surrender to himself, his wife and daughter and their heirs. A mortgage by the husband to plaintiff was held void as against the wife and daughter, after the husband's death.

In *Baker* v. *Lamb,* *11* *Hun* *519,* a farm had been conveyed to a husband and wife.—*Held,* that the wife was not seized of a sufficient separate estate therein to enable her to charge it with the payment of a promissory note made by her.

In *French* v. *Mehan,* *56* *Pa.* *St.* *286,* a wife surviving her husband, was held to take the entire interest in lands conveyed to her and her husband, as against a purchaser under an execution for debts of the husband. See *Mc-Curdy* v. *Canning,* *64* *Pa.* *St.* *39 ;* *Allston* v. *Bank,* *2* *Hill* *Ch.* *235 ; Bennett* v. *Child,* *19* *Wis.* *362 ; Cook* v. *Kennerly,* *12* *Ala.* *42 ; Moss* v. *McCall,* *Id.* *630 ; Jones* v. *Chandler,* *40* *Ind.* *588 ; Beach* v. *Hollister,* *3* *Hun* *519 ; Wade* v. *Krumm,* *54* *How.* *Pr.* *95 ; Cleary* v. *McDowell,* *Cheves* *139 ; Jones* v. *Fort,* *1* *Rich.* *Eq.* *50.*

In *Simpson* v. *Pearson,* *31* *Ind.* *1,* an administrator of a husband was held

Greiner *v.* Greiner.

ber, 1880, the administratrix presented an affidavit to the court
that the stock, which was appraised at par, had fallen in value,
and was then worth only about seventy or seventy-five cents on
the dollar, and that by the before-mentioned decree of the court
of chancery, she had been, from the date thereof (May 30th,
1877), enjoined from disposing of the stock or its accumulations,
and therefore had been compelled to hold it notwithstanding the
depreciation, and she thereupon prayed that the court would
credit her with the amount of the depreciation in case it should
confirm the master's report with regard to the stock. The
orphans court, by its decree dated June 1st, 1881, confirmed the
master's report as to the stock and dividends, but not as to the
loan and interest which it allowed, and refused to make allow-
ance to the administratrix for the alleged depreciation of the
stock. It also ordered that a counsel fee of $400 to each side
and the costs of all the proceedings upon the exceptions be paid
out of the estate. These appeals bring its adjudication as to all
those matters up for review, but the only subjects presented on
the argument were, on the one hand, the refusal to allow the
amount of the depreciation, and, on the other, the allowance of
the loan and interest and the order for the payment out of the
estate of a counsel fee to the counsel of the administratrix

incapable to sell any interest in lands conveyed to the husband and wife, to
pay his debts, the wife surviving. See *Simmons's Estate, 4 Clark (Pa.) 204.*

In *Prout* v. *Hoge, 57 Ala. 28,* a wife purchased lands with her own money,
giving a mortgage thereon for a part of the purchase-money, and taking a
bond for the title. Afterwards, for the better securing of the debt, the deed
was made to her and her husband, who thereupon gave a mortgage on the
premises for the unpaid purchase-money.—*Held,* that the wife was neverthe-
less entitled to enforce a conveyance to herself. See *Marburg* v. *Cole, 49 Md.
402.*

In *Anderson* v. *Tannehill, 42 Ind. 141,* lands were conveyed to a husband
and wife and a third person, the husband and third person giving notes for the
purchase-money, which the wife did not sign. She afterwards signed them.
—*Held;* that the notes were void as to her, but that the vendor's lien for the
purchase-money was valid as against her.

In *Banton* v. *Campbell, 9 B. Mon. 587,* lands and slaves were conveyed to a
husband and wife. The husband, during his lifetime, made advancements of
some of his own slaves to the heirs of the wife, who survived him. After-

Greiner v. Greiner.

and the costs of the litigation—the next of kin insisting that the court should have ordered that the costs be paid by the administratrix out of her own funds, and that no counsel fee should be allowed to her. By the decree of the court of chancery the transfers of the 'stock were, as before stated, set aside as fraudulent, and the title to the stock thereupon stood in the administratrix in her representative capacity as such, but she was enjoined from selling, assigning, transferring or in any way encumbering or disposing of the stock or of any part thereof, or of any part of the accumulations, until the further order of that court. It is true, leave was given in the decree to either party to apply to the court on the foot of the decree as occasion might require. But the bill in the suit stated that neither the stock nor its accumulations or dividends were needed for the payment of any debts of, or claims against the estate, and prayed that the administratrix might be decreed to hold the stock and accumulations and dividends as trustee or administratrix, for distribution to the next of kin of the intestate, in the final settlement of the estate ; and the decree not only required her to hold the stock and its accumulations and dividends, but required her to account in chancery for them. Under that decree she was justified in holding the stock for distribution and

wards the wife died.—*Held,* that the slaves advanced by the husband were not to be deducted from the heirs' interest in the wife's lands by survivorship, as advancements. See *Cleland* v. *Watson, 10 Gratt. 159.*

In *Snyder* v. *Sponable, 1 Hill (N. Y.) 567,* an unrecorded mortgage existed on lands conveyed to a husband and wife, of which notice was given to the husband, at the time of the conveyance, but not to the wife. The mortgage was afterwards foreclosed, and the purchaser under it sued the husband in ejectment and recovered. The husband having died, the wife brought ejectment against the one in possession under the foreclosure purchaser.—*Held,* that the record of the former recovery against her husband was inadmissible against her ; and that the notice to her husband did not operate as notice to her, so as to give the mortgage priority over her title, especially if she paid the purchase-money ; otherwise, if the consideration had been paid by the husband out of his own funds.

In *Meeker* v. *Wright, 76 N. Y. 262,* lands were conveyed to a husband and wife. The husband afterwards conveyed his interest in those lands, and also in other lands held by him in his own name, and also some personal property, directly to his wife by deed, she giving him a mortgage thereon for part of

Greiner v. Greiner.

could not be held to have been derelict in her duty because she did not sell it, unless, indeed, she became aware, at any time after the decree, that the stock was likely to depreciate in the market, in which case it was her duty (as it was her own interest, also), as a trustee, to apply to chancery for leave to sell. If, however, she was not apprised of the probability of depreciation and had no reason to apprehend it, she incurred no liability to the next of kin on account of the depreciation, and it would be extremely unjust, under the circumstances, to visit upon her the consequences of the depreciation. The next of kin obtained the decree. They were not satisfied with setting aside the fraudulent transfers, but successfully sought to compel her to hold the stock for specific distribution for their own benefit. They themselves might, had they been aware of the probability of depreciation, have applied to chancery in the premises. The injunction which they obtained compelling her to hold the stock for specific distribution, and preventing her from disposing of it without an order of the court of chancery, no doubt prevented her, to a very great degree, from exercising her judgment in regard to it as she otherwise would have done, or, at least, prevented her from exercising it to the same extent. It appears, by her answer in the chancery suit, that she was aware, through

---

the purchase-money.—*Held*, that his administrator could collect from her the money due on the mortgage, after her husband's death.

In *Elliott* v. *Nichols, 4 Bush 502*, a wife's father conveyed lands to her and her husband in 1837. The wife died in 1861, and the husband mortgaged the lands in 1865.—*Held*, that the mortgagees could enforce their mortgage against the entire estate, as against the heirs-at-law of the wife, but had the wife survived her husband, " neither the husband, nor his heirs or assigns, nor the mortgagees, nor even the purchasers under a decretal sale foreclosing the mortgage, could have held against her " (*p. 506*).

In *Berrigan* v. *Fleming, 2 Lea 271*, a mortgage on lands standing in the name of a husband and wife, was signed and acknowledged by the husband and wife, but was held invalid to transfer any interest from her because her name was not mentioned in the body of the mortgage. The wife, however, having died pending the foreclosure—*Held*, that the mortgagee was entitled to the benefit of the husband's survivorship. See *Wochosa* v. *Wochosa, 45 Wis. 423; Shroyer* v. *Nickell, 55 Mo. 264; Wales* v. *Coffin, 13 Allen 213; Sim-*

advice of counsel, of the risk she ran in holding the stock as administratrix, unless authorized or required to do so. It is not at all improbable that under the injunction she regarded herself as free from that liability. She is entitled to allowance for the depreciation. The fact of depreciation seems not to have been disputed. The amount of it, however, appears not to have been established. It may be done here.

As to the next ground of objection: Apart from the testimony of the administratrix, the proof is clear that Dr. Greiner received about $4,000 of his wife's money in the year 1874. Mr. Parker, the cashier of the Merchants National Bank, testifies that in that year Dr. Greiner brought to him a draft from Germany for about $4,000, and said it was his wife's money. He says Dr. Greiner asked him to sell the draft for him, and he did so and deposited the proceeds to Dr. Greiner's credit in the bank. It appears that Dr. Greiner asked his advice as to the proper kind of investment for it, and also said he wanted to keep his wife's money separate from his own. The next of kin, while they do not deny that he received the money, insist that it was expended by him in paying off a mortgage upon certain real property in Newark, which he had bought and the title to which he had taken in the names of himself and wife. There is no evidence that that use of the money was authorized or confirmed or even known by her. When he received the money, which was her separate property, he became trustee of it for her, and was bound to account to her for it accordingly. *Vreeland* v. *Vreeland's Admr.*, 1 C. E. Gr. 512; *Clawson* v. *Riley*, 7 Stew. Eq. 348.

*mons's Estate*, 4 Clark (Pa.) 204; *Kip* v. *Kip*, 6 Stew. Eq. 213, 216 ; *Petesch* v. *Hambach*, 48 Wis. 443 ; *Manigault* v. *Deas*, Bail. Eq. 283.

In *Burr* v. *Swan*, 118 Mass. 588, a married woman was held liable on a note signed by her, the consideration of which was labor on land of which she was tenant in common with her husband. See *Hughes* v. *Anslyn*, 7 Mo. App. 400.

In *Scott* v. *Claiborne*, 6 Munf. 117, property conveyed in trust for the use of a husband and wife during their joint lives, was held liable to execution to satisfy a debt incurred after the marriage, for supplies furnished for the support of the husband and wife. But see *Tupper* v. *Fuller*, 7 Rich. Eq. 170 ; *Brandon* v. *Brandon*, 14 Kan. 342. Also, *See* v. *Zabriskie*, 1 Stew. Eq. 422, note.—REP.

If he applied it to the payment of the mortgage, the land was not her separate property, but belonged to both, and if he had survived her he would have been the sole owner of it as survivor. The payment, therefore, cannot be regarded as one made for the benefit of her separate estate. According to her testimony (which appears to have been given without objection as to its competency on this head), he received the money to invest it in bank or insurance stock for her. There is, then, no error in the decree of the orphans court on this subject. Only part of the exceptions to the final account was sustained, and it was a proper exercise of discretion to direct that the costs, including counsel fees of both sides, should be paid out of the estate. She, it may be remarked in this connection, is by law entitled to one-half of the estate, seeing that there are no children. The costs of the appeals on both sides will be paid out of the estate.